IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-00192-GCM

| | | |
|---|---|---|
| NORTH CAROLINA CONSTITUTION PARTY, AL PISANO, NORTH CAROLINA GREEN PARTY, and NICHOLAS TRIPLETT, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| GARY O. BARTLETT, as Executive Director of the North Carolina Board of Elections; and LARRY LEAKE, ROBERT CORDLE, CHARLES WINFREE, and RONALD G. PENNY, as Members of the North Carolina Board of Elections, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Doc. No. 36], Plaintiffs' response [Doc. No. 37], and Defendants' reply [Doc. No. 38]. The matter, fully briefed by both parties and heard by the Court during February 27, 2013 telephonic oral arguments, is ripe for determination. For the reasons set forth below, the Court will GRANT Defendants' Motion.

**I. BACKGROUND**

**1. The Parties**

Plaintiff North Carolina Constitution Party ("Constitution Party") is an organized political party that is affiliated with the national Constitution Party. [Amended Complaint at ¶ 3] Plaintiff Al Pisano, a resident of Charlotte, North Carolina, is Chairperson for, and a member of,

1

the North Carolina Constitution Party. [*Id* at ¶ 4]. While the Constitution Party seeks new party status in North Carolina, it is not a new organization. Rather, it dates its organization under the original name "U.S. Taxpayers Party" to 1992. The name changed to "Constitution Party" in 1999. *See* www.constitutionparty.com/press_kit.php.

Plaintiff North Carolina Green Party ("Green Party") is an organized political party affiliated with the Green Party of the United States. [*Id* at ¶ 5]. Plaintiff Nicholas Triplett, a resident of Charlotte, North Carolina, is the Vice Chairperson of legislative affairs for, and a member of, the North Carolina Green Party. [*Id* at ¶ 6]. The Green Party dates its organization in the United States to 1984, and presently 133 members hold office in 25 states and the District of Colombia. *See* www.gp.org/elections/officeholders/index.php.

Defendants are all citizens and residents of the State of North Carolina. [*Id* at ¶ 12]. Defendant Gary O. Bartlett is the Executive Director of the North Carolina State Board of Elections. [*Id* at ¶ 8]. Defendant Larry Leake is the Chairman and a member of the North Carolina State Board of Elections. [*Id* at ¶ 9]. Defendant Robert Cordle is the Secretary and a member of the North Carolina State Board of Elections. [*Id* at ¶ 10]. Defendants Charles Winfree and Ronald G. Penny are also members of the North Carolina Board of Elections. [*Id* at ¶ 11].

**2. Statement of the Facts**

North Carolina elections statutes provide three ways for a candidate to obtain a spot on a general election ballot for any partisan federal, state, county or municipal office. First, candidates can be nominated by a recognized political party. A party is considered a recognized political party if it polled in the last general election for its "candidate for Governor, or for presidential electors, at least two percent (2%) of the entire vote cast in the State" for those

offices. N.C. Gen. Stat. §163-96(a)(1). The Democratic, Republican, and Libertarian Parties qualified as recognized political parties under this provision. See Defendants' Response, Ex. 1, Bartlett Affidavit at ¶ 6. Those parties nominate candidates in the primaries. Their Presidential and Vice-Presidential candidates are nominated in conventions.

Second, a candidate can be nominated by a new political party. A group may qualify as a new political party by meeting the petition requirements of N.C. Gen. Stat. § 163-96(a)(2) and (b)(1). A new party must collect signatures on petitions signed by registered and qualified North Carolina voters "equal in number to two percent (2%) of the entire vote cast in the State for Governor or for presidential electors," with 200 signatures from registered voters from each of four congressional districts in North Carolina. The petitions must be submitted to the county boards of elections by May 17 for verification so that they may be submitted to the State Board of Elections by June 1. In 2012, the required number of signatures was 85,379. See Defendants' Response, Ex. 1, Bartlett Affidavit at ¶ 6. On April 13, 2012, the State Board of Elections certified Americans Elect as a new party for inclusion on the 2012 general election ballot. *Id*. For the first general election following qualification, a new party nominates candidates at a nominating convention held by July 1. N.C. Gen. Stat.§ 163-98.

Third, a candidate may gain a spot on the ballot via nomination by petition as an unaffiliated candidate. N.C. Gen. Stat. § 163-122. A candidate may also qualify for non-municipal partisan races as a write-in candidate by meeting the requirements of N.C. Gen. Stat. § 163-123, but that candidate's name will not appear on the ballot.

In North Carolina, a group is not limited to a time period for gathering petition signatures. A group has notice of the requisite number of signatures three and one-half years beginning immediately after the preceding presidential and gubernatorial elections. North

Carolina election statutes do not set a start date on the signature collection process. There are numerous opportunities for groups to collect signatures in North Carolina, such as at fairs, athletic events, college campuses, churches, civic groups. See Defendants' Response, Ex. 1, Bartlett Affidavit. Groups may also collect signatures on city sidewalks.[1] Additionally, North Carolina does not restrict who may collect petition signatures and allows registered voters to sign multiple petitions.[2]

### 3. Plaintiffs' Contentions

Plaintiffs allege that the two percent requirement contained in N.C. Gen. Stat. § 163-96 is one of the highest petition requirements in the country, and that the May 17 deadline imposes severe, unwarranted, and unnecessary burdens on the Plaintiffs' abilities to place their parties' nominees for President and Vice President on the general election ballot. [Amended Complaint at ¶¶ 24-25]. Furthermore, Plaintiffs claim that North Carolina lacks any rational basis or compelling reason to allow the Republican and Democratic Parties until August and September to make their nominating decisions for President and Vice President while requiring plaintiffs and other third parties to submit their nominating petitions in the middle of May. [*Id* at ¶ 26]. As a point of clarification, the Court notes that the May 17 deadline is for the submission of petitions signed by registered voters in support of the formation of the new party while the nominees of the party are named in a convention held by July 1. N.C. Gen. Stat.§ 163-98.

Plaintiffs contend that the requirements of N.C. Gen. Stat. § 163-96 severely burden the ability of new parties to place their candidates for President and Vice President on the general

---

[1] Central business districts in North Carolina cities such as Charlotte, Raleigh, Greensboro, Durham, Winston-Salem, Asheville, Wilmington, just to name a few, can be particularly busy with pedestrian traffic during the morning, at lunch time, and in the afternoon on business days.

[2] In 2004, the language of the petition was revised so that a signer no longer is affirming that they intend to organize the party. N.C. Gen. Stat. C3-96(b).

election ballot and therefore violate Plaintiffs' First and Fourteenth Amendment rights, which are protected by the United States Constitution and by 42 U.S.C. § 1983. [*Id* at ¶ 28]. Additionally, Plaintiffs claim that N.C. Gen. Stat. § 163-96 violates Plaintiffs' rights protected by the Equal Protection Clause in the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983 because it imposes a more severe burden on new party candidates for President and Vice President to qualify as party nominees for the general elections ballot than that imposed on the "major" political party candidates. [*Id* at ¶ 29]. On May 10, 2012, this Court denied Plaintiffs' request that the Court enter a preliminary injunction barring Defendants from enforcing the requirement in North Carolina General Statute § 163-96 that new party candidate for President and Vice President must submit their petitions to qualify for the general election ballot to county boards of election by May 17 and by June 1 to the State Board of Elections. [Doc. No. 33].

Plaintiffs do not suggest a substitute filing deadline that Plaintiffs contend would be constitutional. However, they do concede that some deadline is necessary. Additionally, Plaintiffs do not challenge the number of signatures required for new ballot access, a requirement upheld by the Fourth Circuit. *See McLaughlin v. North Carolina Bd. of Elections*, 65 F.3d 1215, 1226 (4th Cir. 1995). The Court notes that Plaintiffs barely even addressed the merits of the Defendants' Motion for Summary Judgment in their response brief [Doc. No. 37]. Instead, Plaintiffs opted to argue that the summary judgment motion is premature because of the lack of discovery in this case.[3]

---

[3] The Court denied Plaintiffs' Rule 56(d) motion on October 18, 2012 [Doc. No. 44]. However, the Court noted that Defendants had no objection to Plaintiffs collecting affidavits in opposition to Defendants' motion before the Court ruled on the Motion for Summary Judgment which the Court anticipating doing sometime in December 2012. The Court notes that no affidavits were submitted to the Court by the Plaintiffs before the hearing February 27, 2013 hearing date.

## II. STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the non-moving party. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the court must "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## II. ANALYSIS

The Court begins by noting that the Plaintiffs' concede that following this Court's denial of the preliminary injunction motion, any argument relating to injunctive relief for the 2012 presidential election is moot and that what remains in this case is the constitutionality of the mid-May deadline in future presidential elections. Plaintiffs contend that the injury they suffer is the future denial of the ability to seek ballot access that is free of unduly burdensome requirements (such as the early filing deadline). For the purpose of reaching the merits of the constitutional challenge, the Court will assume, without deciding, that Plaintiffs have standing.

### A. The Framework for Considering Challenges to Ballot Access Statutes

States have significant latitude under the Constitution in structuring their own election law. The right to vote in any manner and the right to associate for political purposes through the ballot are not absolute. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S.Ct. 533 (1986).

The Supreme Court laid out the initial test for evaluating election law claims in *Anderson v. Celbrezze*, 460 U.S. 780, 103 S.Ct. 1564 (1983), and has since clarified the *Anderson* test to direct that:

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule,"

*Burdick v. Takushi*, 504 U.S. 428, 434, 112 S.Ct. 2059 (1992) (internal citations omitted). In addition to its explicit endorsement of the *Anderson* approach, the *Burdick* Court reaffirmed the clarification that when an election law subjects constitutional rights to "severe" restriction, the

7

regulation must be "narrowly drawn to advance a state interest of compelling importance." *Id*. (citing *Norman v. Reed*, 502 U.S. 279, 288-89, 112 S.Ct. 698 (1992).

Under the *Anderson* framework, election laws are usually subject to an ad hoc balancing. *Greene v. Bartlett*, No. 5:08-CV-0888-GCM, 2010 WL 3326672, at *3 (W.D.N.C. Aug. 24, 2010). While severe burdens on protected interests are subject to strict scrutiny, a rational regulation that imposes only moderate burdens could fail the balancing test if the interests it serves are minor. *Id*. Alternatively, a regulation that serves no discernable state interest would not fail the balancing test if it imposes no burden. *See McLaughlin*, 65 F.3d at 1221, n. 6.

### B. State's Interest in Limiting Ballot Access

It is well settled that the State has a legitimate interest in limiting access to the ballot in order to prevent ballot clutter and voter confusion, and to discourage frivolous candidates. *Greene*, 2010 WL 3326672 at *3. "We have recognized that, 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Anderson*, 460 U.S. at 788 (quoting *Storer*, 415 U.S. at 730). Regarding the deadlines at issue in N.C. Gen. Stat. § 163-96, "the State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Id* at 788. Furthermore, the Supreme Court "never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro*, 479 U.S. at 194. Such a requirement would ensure a state's political system must sustain a certain level of damage before the legislature could take corrective action. *Id*. at 195.

### C. North Carolina's Petition Filing Deadline Requirements for New Parties

Plaintiffs contend that the filing deadline requirements of N.C. Gen. Stat.§ 163-96(a)(2) and (b)(3) impose unnecessary and unduly severe burdens on their rights and on the rights of Constitution and Green Party members and supporters to associate and to advance the party's platform and candidates. Plaintiffs also claim that the May 16 deadline creates an unjustified discrimination against the Constitution and Green Parties because the State allows statewide independent candidates until June 14 to submit their signatures.

A court must determine if "the totality of the [state's] restrictive laws taken as a whole imposes a[n unconstitutional] burden on voting and associational rights. *McLaughlin*, 65 F.3d at 1223 (citing *Williams v. Rhodes*, 393 U.S. at 34). *Storer* further notes, "a number of facially valid election laws may operate in tandem to produce impermissible barriers to constitutional rights." 415 U.S. at 737. As other federal circuit courts facing similar challenges to state ballot access restrictions upheld deadlines similar to North Carolina's, this Court must look towards the totality of the burden placed upon a new political party in determining whether the filing deadline requirements are unconstitutional.

It is not clear to the Court what, based on the *Anderson* and *Burdick* framework, constitutes a "severe restriction" and triggers strict scrutiny. Nonetheless, the Court will follow the Fourth Circuit's lead in *McLaughlin* and analyze the filing deadline requirements for new parties under strict scrutiny. 65 F.3d at 1221. Therefore, the filing deadline requirements of N.C. Gen. Stat.§ 163-96 will be upheld only if those requirements are narrowly tailored to advance a compelling state interest. This Court will address the constitutionality of (1) the impact of the filing requirement deadlines on Plaintiffs' First and Fourteenth Amendment rights of political participation, and (2) the disparity in the date of the deadline filing requirement for

unaffiliated candidates and new party candidates.

### 1. The Impact of N.C. Gen. Stat.§ 163-96 Petition Filing Deadline Requirements on Plaintiffs' First and Fourteenth Amendment Rights

The Court finds that the filing deadline requirements have no impact on Plaintiffs' First and Fourteenth Amendment rights of political participation. The deadlines in N.C. Gen. Stat. § 163-96 are immaterial to Plaintiffs' ability to participate in the political process. Rather, it is the signature collection requirements that severely impact Plaintiffs' ballot access, and the Fourth Circuit previously applied strict scrutiny to hold that the signature collection requirements of N.C. Gen. Stat. § 163-96 do not unconstitutionally burden rights guaranteed by the First and Fourteenth Amendments. *McLaughlin*, 65 F.3d 1215.

Even if this Court found that the filing deadline requirement has a significant impact on Plaintiffs' rights of political participation, then this Court would rule that the filing deadlines are constitutional. The deadlines are narrowly tailored to advance a compelling government interest. The Supreme Court "long has recognized that state have important and compelling interests in regulating the election process and in having ballot access requirements." *Green v. Mortham*, 155 F.3d 1332, 1335 (11th Cir. 1998) (collecting cases). Particularly, the Supreme court emphasized that a state has an "important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot - the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness*, 403 U.S. at 442. The deadlines in N.C. Gen. Stat. § 163-96 serve North Carolina's compelling interests in regulating the election process and in having ballot access requirements. N.C. Gen. Stat. § 163-96 is narrowly tailored to advance the State's compelling interests because any burden imposed on Plaintiffs by the filing

deadline is significantly lessened by the alleviating factors in the overall statutory scheme such as the fact that North Carolina: (1) sets no time limit on the time period in which signatures could be gathered; (2) North Carolina does not preclude voters from signing petitions based on party affiliation; (3) does not restrict new parties seeking signatures from obtaining signatures from persons who signed other petitions; (4) does not restrict how may signatures could come from a specific geographic area; (5) does not restrict how many signatures could be submitted to attempt to meet the two-percent requirement; and (6) allows unlimited time to conduct the petitioning. *See Swanson v. Worley*, 490 F.3d 894 (11th Cir. 2007) (listing alleviating factors in Alabama's statutory scheme and upholding Alabama's filing deadline with a three-percent signature requirement). Thus, Plaintiffs have at least three-and-one-half years since the last general election for Governor, and potentially even longer than that, to collect the required number of signatures on their new party petitions in order to timely file sufficient petitions. This extended time period provides Plaintiffs ample time to comply with the North Carolina's new party petition filing deadlines.

## 2. The Disparity in the Date of the Petition Filing Deadline Requirements for Unaffiliated Candidates and New Party Candidates

The Court finds no equal protection violation because new party candidates and unaffiliated candidates are not similarly situated. Indeed, courts have recognized the distinction between a new party and an unaffiliated candidate. *Delaney v. Bartlett,* 370 F. Supp. 2d 373 (M.D.N.C. 2004); *Greene*, 2010 WL 3326672 at *4-5). In *Greene*, the Court found that unaffiliated candidates and new party candidates are not similarly situated. 2010 WL 3326672 at *4. Furthermore, a political party is fundamentally different from an unaffiliated candidate because a party is an affiliation. Finally, North Carolina's statutory scheme provides the same

petition requirements (collection of signatures of two-percent of the total number of votes from each of the four congressional districts in North Carolina) in order for both new party candidates and unaffiliated candidates to gain access to the ballot. *See* N.C. Gen. Stat. ¶¶ 163-96 and 163-122. The Court finds that the petition filing deadlines are immaterial in light of the signature collection requirements and that, if material, the deadlines are narrowly tailored to advance a compelling government interest.

The Court notes that Plaintiffs, in their Amended Complaint, contend an equal protection violation based on the severe burden placed on new party candidates when compared to "major party" candidates. The Court finds no equal protection violation on this basis because Democratic and Republican candidates are already qualified as recognized political parties based on their performance in the prior election under the provisions in N.C. Gen. Stat. ¶ 163-96(a)(1). A recognized political party in North Carolina is not similarly situated to a group seeking qualification as a new political party.

### III. CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment {Doc. No. 36] is GRANTED and this case is now closed.

IT IS SO ORDERED.

Signed: March 1, 2013

Graham C. Mullen
United States District Judge